IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONATHAN L.,[1]                                      No. 3:19-CV-1419-MO

               Plaintiff,                          OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

               Defendant.


MOSMAN, District Judge:

       This matter comes before me on Plaintiff Jonathan L.'s Complaint [ECF 1] against

Defendant Commissioner of the Social Security Administration. For the reasons given below, I

AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

## PROCEDURAL BACKGROUND

On June 11, 2015, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Tr. 20, 205, 212-17. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 20, 109-10. Plaintiff appeared before Administrative Law Judge ("ALJ") Linda Thomasson on January 17, 2018. Tr. 43-74. On February 12, 2018, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 7, 21, 35-36. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-2.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his protective filing date of June 11, 2015. Tr. 22. At step two, the ALJ determined that Plaintiff had the following severe impairments: schizophrenia, ADHD, depression, obesity, bilateral foot disorder (plantar fasciitis), hernia, and asthma. Tr. 22. The ALJ determined that Plaintiff's medically determinable impairments of lumbar spine disorder, severe OSA, and left shoulder/elbow pain were non-severe. Tr. 23-24. At step three, the ALJ found that Plaintiff's impairments did not meet the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Tr. 24. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs, stoop, crawl, kneel, and crouch. The claimant can have no exposure to hazards, such as moving mechanical parts, unprotected heights, or operating a motor vehicle. He can have occasional exposure to fumes, odors, dusts, gases, and other pulmonary irritants. The claimant is limited to jobs with a reasoning level of 2 or less. He is limited to performing simple and routine tasks, and is limited to simple, work-related decisions. The claimant can have no contact with the public.

Tr. 26.

At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 34. At step five, the ALJ found that Plaintiff retained the capacity to perform jobs that exist in significant numbers in the national economy, specifically production assembler, inspector/hand packager, and folder. Tr. 35. The ALJ therefore found Plaintiff not disabled. Tr. 35-36.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises two primary issues with the ALJ's decision. First, he contends that the ALJ unreasonably discounted his symptom testimony without clear and convincing reasons for doing so. And second, Plaintiff argues that the ALJ erred in disregarding examining occupational therapist Trevor Tash's medical opinions. I address each issue in turn.

## I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that past full-time work attempts were unsuccessful due to extreme exhaustion, mental fatigue, and feeling physical ill. Tr. 102-03, 105-06, 108. Interacting with "challenging customers" caused anxiety and made it difficult for him to think clearly. Tr. 109. He lived on his own but stayed at his mother's house a few nights a week. Tr. 104. His mother paid his rent, assisted him with transportation, made phone calls on his behalf, and helped advocate for him. Tr. 104. He was enrolled in college, where he received disability accommodations, including extra time and quiet environments for testing and additional breaks during class. Tr. 104. His classes were about two-and-a-half hours long, and he usually needed to

take a couple of ten-minute breaks per class because he had trouble focusing. Tr. 104-05.

Plaintiff testified that he sometimes forgets to take his medication or to go to appointments. Tr.

105. His mother and grandmother provide a lot of reminders and assistance. Tr. 105. He has

daytime fatigue despite getting a full night of sleep with medication. Tr. 106. He stated that he

feels stable some days, then other days experiences mood swings, anxiety, difficulty focusing,

and difficulty dealing with conflict. Tr. 107. He is socially awkward and has a hard time in large

crowds. Tr. 107. He is prone to stress and anxiety, and he testified to panic and difficulty

thinking clearly. Tr. 107.

  The ALJ found Plaintiff's medically determinable impairments could reasonably be

expected to cause some symptoms and did not identify evidence of malingering. Tr. 26.

However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and

limiting effects of his symptoms were not entirely consistent with the medical evidence and other

evidence in the record. Tr. 26. Specifically, the ALJ found Plaintiff's symptom allegations were

inconsistent with the objective medical evidence, inconsistent with Plaintiff's activities of daily

living and work history, and that Plaintiff's conditions improved with treatment.

  *A. Objective Medical Evidence*

  The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom

allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to

assist us in making reasonable conclusions about the intensity and persistence of your

symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the

claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."

*Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v.*

*Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

Concerning Plaintiff's testimony about his schizophrenia, ADHD, and depression, the ALJ reasonably discounted these allegations as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that he "hear[s] voices sometimes" and that it's "hard to concentrate." Tr. 65. The ALJ reasonably contrasted this testimony with the medical record, which suggested Plaintiff's mental health impairments were well under control. Tr. 27. For example, Plaintiff's mental health examination was unremarkable, and subsequent treatment notes did not contain significant mental health examination findings. Tr. 27, 787-90, 823, 830, 833, 842, 844, 848, 857. Similarly, in 2015, his therapist noted Plaintiff had a euthymic mood and regulated affect, with a polite and collaborative attitude. Tr. 27, 825. The longitudinal record showed similarly unremarkable mental status examinations over the next few months and years. Tr. 27, 28-29 (citing, e.g., Tr. 636, 637, 685-92, 696-98). For instance, at a consultative evaluation in December 2015, Plaintiff's mental status examination was relatively unremarkable. Tr. 28, 636. He reported that medication helped with voices, which he heard "rarely," he did not feel sad or down, and he was not anxious. Tr. 28, 637. In November 2017, Plaintiff's mental status examination indicated no change, with a normal affect, thought content and process, and intellectual functioning. Tr. 30, 1093. In all, substantial evidence supported the ALJ's decision to discount Plaintiff's testimony about schizophrenia, ADHD, and depression because it conflicted with the record evidence.

The ALJ also reasonably found the medical record did not bear out Plaintiff's testimony about the severity of his physical impairments. At the hearing, Plaintiff testified that his sleep

apnea rendered him tired and unable to focus, and that his plantar fasciitis made it difficult and painful for him to stand or walk for long periods. Tr. 60-62, 66. Concerning Plaintiff's sleep, the ALJ noted that while Plaintiff had some difficulty sleeping, a sleep study in early 2016 showed he responded well to CPAP. Tr. 24, 959-61. And, in May 2017, Plaintiff had surgery for a deviated septum to continue improving his sleep apnea issues when CPAP was no longer an option. Tr. 24, 1033; see also Tr. 964, 992, 993, 995. Concerning Plaintiff's foot pain, the ALJ accepted that Plaintiff had a "severe" bilateral foot disorder. Tr. 22. But the ALJ discounted testimony suggesting Plaintiff could not stand or walk due to his plantar fasciitis because numerous medical records showed Plaintiff had a normal gait, normal lower extremity strength and sensation. Tr. 30, 34 (citing Tr. 526, 549, 619-20, 615, 667-69, 1000-01, 1015). Because the ALJ sufficiently accounted for Plaintiff's foot impairment in the RFC, and substantial evidence supported the decision to discount the bleaker symptom allegations in Plaintiff's testimony, the Court will uphold the ALJ's decision.

Plaintiff argues the ALJ erred in discounting his testimony about foot pain because the balance of the medical evidence supports his, rather than the ALJ's interpretation of the evidence. Specifically, Plaintiff points to a variety of medical records where he reported significant foot pain that support his claim that he is unable to stand or walk for long periods or work for consecutive full workdays. Pl. Br. ECF No. 20 at 10 (citing Tr. 614, 997, 999, 1003-04, 1006, 1009, 1030, 1107-11). But Plaintiff's arguments are an effort to have this Court re-weigh the evidence, which this Court may not do. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (noting "[w]e may not reweigh the evidence or substitute our judgment for that of the ALJ"). The Court evaluates only whether the ALJ's decision was supported by "substantial evidence," *i.e.,* whether it has the "power to convince." *Smartt*, 53 F.4th at 499. As described above, the ALJ

supported the decision to discount Plaintiff's testimony with sufficient record evidence, and the Court will not disturb that factual finding on review.

        B.      *Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The ALJ reasonably concluded that Plaintiff's fatigue and mental health symptoms improved with treatment, which undermined his hearing testimony. Although Plaintiff complained that he was unable to work due to fatigue and inability to focus, after restarting his medications in July 2015, Plaintiff presented at medical appointments as fully oriented and alert, with a normal mood, affect, and behavior. Tr. 27, 1004, 1015, 1024. At an August 2015 assessment he reported that he only "sometimes" heard voices, and that his medication managed auditory hallucinations. Tr. 27, 787-90. The therapist Plaintiff saw in 2015 likewise reported Plaintiff's mental health symptoms were "well controlled," and the medical record showed similar unremarkable mental status examinations over the next few months and years. Tr. 27, 28-29; see, e.g., Tr. 636, 637, 685-92, 696-98, 704, 738-39, 752-58, 861, 1093. The record shows that medication, and ultimately surgery for a deviated septum, lessened his fatigue symptoms as well. Tr. 24, 959-61, 1033. This is another clear and convincing reason, supported by substantial

evidence to discount Plaintiff's symptom testimony, and the Court upholds the ALJ's decision to discount Plaintiff's testimony on the basis that his symptoms improved with treatment.

      C.     *Daily Activities & Work History*

The ALJ also discounted Plaintiff's subjective symptom testimony about his foot pain, fatigue, and mental health limitations because it was inconsistent with his reported daily activities. Tr. 22-31. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). An ALJ can also consider "any work activity, including part-time work, in determining whether a claimant is disabled." *Ford*, 950 F.3d at 1156 (citing *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

At the hearing, Plaintiff testified that he went out alone, used public transportation, shopped in stores, and worked in public settings. Tr. 32, 302-06. Plaintiff also attended college classes on campus, where he earned As and Bs, with a 3.3 grade point average the quarter before the administrative hearing. Tr. 24, 25, 32, 52. Plaintiff studied math, writing, and computer skills, spending 10 to 15 hours studying and obtaining help from a tutor. Tr. 32, 60-61. He had a friend at school and enjoyed his classes, although he had a lot of homework. Tr. 32, 52-53. He planned to pursue a degree. Tr. 53. As far as daily activities, Plaintiff shared that he prepared

meals and performed household chores, including cleaning, laundry, mopping, repairs, and mowing. Tr. 31-32, 304. He went out a few times a day and walked, rode a bicycle, and used public transportation. Tr. 32, 305. He quit a full-time job because it was "annoying." Tr. 32, 635-36, 706, 738, 752, 1098. In mid-2017, Plaintiff worked with three temporary agencies, a couple of which kept him busy "all the time," but he just wanted to work part time, and if he got disability, he would like to work "a little less often." Tr. 32, 756. Plaintiff also reported that he got a lot of exercise and walked a lot. Tr. 32, 738, 1038. Plaintiff reported that he had started working the prior month doing minimal work as a cashier and prep cook. Tr. 28, 635. He got along with coworkers and supervisors on the job. Tr. 32, 635-36.

At the hearing, Plaintiff testified to difficulty standing and walking due to physical pain, and fatigue and difficulty focusing due to his mental health issues and sleep apnea. Tr. 103-109, which the ALJ reasonably concluded conflicted with his other testimony about working, recreating, and attending school. Even when they do not show transferable work skills, daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. The ALJ reasonably found Plaintiff's record at community college, where he received good grades and planned to graduate, contradicted his testimony of disabling mental health symptoms at the hearing. Tr. 32, 52-53. Plaintiff's significant walking, biking, and ability to do chores likewise undermined his testimony about difficulty standing and walking. Tr, 31-32. The ALJ also emphasized that Plaintiff's work history was inconsistent with testimony suggesting Plaintiff was physically or mentally unable to work. Tr. 32. The ALJ rationally found that these activities, while limited, undermined Plaintiff's allegations of disability and this is a further clear and

convincing reason, supported by substantial evidence, bolstering the ALJ's decision to discount his allegations.

## II.     Medical Opinion Evidence

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings ("SSRs") relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources." Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised versions of 20 C.F.R. § 404.1527, § 416.927, §§ 404.1527 and 416.927 governs Plaintiff's claim.

The revised regulations incorporate the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to other medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent review to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg.

5844-45; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Mr. Tash is an occupational

therapist ("OT"), he is an "other" medical source. *Id.*; *see also* Pl. Br. at 9.

An ALJ may not reject the competent testimony of "other" medical sources without

comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent

testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness

for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r*

*of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not

"discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the

ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to

those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also

may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639,

642 (9th Cir. 1982).

     *A.*     *Trevor Tash, OT*

Trevor Tash, OT, conducted a functional capacity examination of Plaintiff on December

18, 2017. Tr. 1098-1102. He observed Plaintiff perform a variety of physical tasks and provided

an opinion regarding his abilities based on that observation, a review of Plaintiff's impairments,

and Plaintiff's reports to Mr. Tash. *Id.* Mr. Tash opined that Plaintiff would be able to work at

the light to medium level but not for consecutive days if he were required to stand or walk

frequently. Tr. 1101. He observed Plaintiff walking at a slower than average pace. Tr. 1099.

Plaintiff reported that being on his feet for an eight-hour day was extremely painful. Tr. 1099-

1100. Mr. Tash also noted that Plaintiff reported that his feet were burning during the testing. Tr.

1100. He noted that Plaintiff exhibited deconditioning. Tr. 1100. The ALJ rejected Mr. Tash's

opinion about Plaintiff's limited ability to stand and walk, and that he would be unable to work

consecutive days if he had to be on his feet. Tr. 34. The ALJ found assigned little weight to this portion of Mr. Tash's opinion because it was inconsistent with the medical record and Plaintiff's daily activities, and relied too heavily on Plaintiff's subjective reports. *Id.* Both were germane reasons supported by substantial evidence.

First, the ALJ reasonably discounted Mr. Tash' medical opinion limiting Plaintiff's ability to stand and walk because it lacked support in the record. The ALJ may discount the testimony of other sources by giving "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (internal quotations and citation omitted) "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020). Upon physical examination, Mr. Tash observed a range of motion within functional limits of the hips, knees, ankles, and feet. Tr. 31, 1099. Plaintiff had normal strength in his upper and lower extremities, and his sensation was intact. Tr. 31, 1099. Plaintiff could walk on his heels and toes, and there was no significant tenderness to palpation in the bilateral soles of the feet, knees, or low back. Tr. 31, 1099. Mr. Tash observed Plaintiff could sit for 30 minutes, stand stationary for 45 minutes, and move/walk about for 45 minutes. Tr. 31, 1099. Plaintiff's balance was "unimpaired" and he had no manipulative limitations. Tr. 31, 1101. The ALJ also stressed that medical evidence throughout the record showed Plaintiff had normal gait and normal lower extremity strength and sensation. Tr. 34, 526, 549, 619-20, 615, 667-69, 1000-01, 1015. The ALJ also found that Plaintiff's work history and daily activities further undermined Mr. Tash's conclusion. Tr. 34. Ultimately, the ALJ reasonably concluded that Mr. Tash's opinion about difficulty standing and walking was incompatible with objective medical evidence and other evidence in the record.

The ALJ also reasonably considered that Mr. Tash's opinion was overly reliant on Plaintiff's subjective complaints. An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted)); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (holding that a treating physician's reliance on a patient's own discredited subjective complaints is a specific and legitimate reason for discounting the physician's opinion). Here, Mr. Tash stated that the "brevity of the evaluation prohibited prolonged testing of postural endurance" (sitting, standing, and walking). Tr. 34, 1102. Plaintiff told Mr. Tash that it was hard for him to work full-time, and claimed pain in his feet and knees impaired him from working on a day-to-day basis. Tr. 31, 1098. Mr. Tash explained the projection in his opinion that Plaintiff would be limited in sitting, standing, and walking was "based on professional judgment considering diagnosis, observed behavior and worker report." Tr. 34, 1102. The ALJ reasonably discounted Plaintiff's subjective symptom testimony about these limitations, and substantial evidence therefore also supported the ALJ's decision reject Mr. Tash's opinion to the extent it relied on the same faulty testimony.

Plaintiff argues that the record does not, in fact, conflict with Mr. Tash's assessed limitations, and that the ALJ selectively cited medical evidence to support her conclusion. Pl. Br., ECF No. 20 at 10-12. As before, Plaintiff points to the weight of the evidence, which he believes points in favor of finding Mr. Tash' opinions persuasive. But again, it is not this Court's job to weigh the evidence, only to assess whether the ALJ's rationale is "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. The ALJ satisfied that standard, and provided germane reasons supported by substantial evidence when deciding Mr. Tash's opinion about

Plaintiff's ability to sit, stand, and walk was unpersuasive. The Court will therefore affirm the

ALJ's findings.[2]

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this

case with prejudice.

IT IS SO ORDERED.

DATED:____8/11/2023_____.


*Michael W. Mosman*_____
MICHAEL W. MOSMAN
United States District Judge

---

[2] Even if the ALJ did err by discounting this portion of Mr. Tash's opinion, such error would be harmless. As Defendant points out, the vocational expert testified that an individual with Plaintiff's residual functional capacity, age, education, and work experience were further limited to walking and standing for a total of two hours, there were several representative sedentary, SVP 2 occupations he could perform, such as final assembler, table worker, and faxer, with a total of 43,100 jobs nationally. Tr. 71. Any error in discounting this portion of Mr. Tash's opinion was therefore harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).